Matthew N. Bobrow, Esq.
125 East 4th Street (16)
NY, NY 10003

Attorney for Plaintiff(s)

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Jamie FELD, as an individual, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>**-against-**<br><br>POSTMATES, INC., a Delaware state corporation.<br>Defendants. | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL REQUESTED**<br><br>Date Action filed:  May 1, 2019 |

Plaintiff, Jamie Feld, hereby files this Class Action Complaint, individually, and on behalf of all others similarly situated—and makes these allegations based on personal knowledge, and information and belief and/or which are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery—against Defendant, Postmates, Inc. ("POSTMATES" or "Defendant"), as follows:

## I. INTRODUCTION

1. Defendant has made false, misleading statements that are likely to deceive reasonable customers. Defendant has mistakenly or misleadingly represented that its POSTMATES-branded delivery application and website ("the Service") would (1) delivery "Anything. Anytime. Anywhere.", and that it ran an "anything" network, when in fact, they do not, because the Service does not allow delivery of anything, anytime, or anywhere; (2) deliver food for a stated

"Delivery Fee", which in fact, they do not, because the Service charges an extra, hidden "Service Fee".

2. Defendant's "Anything. Anytime. Anywhere." statement prominently displayed on the POSTMATE's website and application is false, misleading, and likely to deceive reasonable customers, such as Plaintiff and members of the Class, because the Service is not able to deliver "Anything. Anytime. Anywhere.".

3. The ability to deliver from restaurants or kitchens in New York City ("NYC") is highly coveted, evinced by the operation of at least three other delivery services with exclusive arrangements with restaurants (i.e., Seamless, Caviar, and Uber Eats). Contrary to Defendant's express or implied representations, the POSTMATE's website and application cannot deliver anything, anytime, anywhere – and might be POSTMATE's attempt to increase the value of their brand unfairly to customers, while their competitors continue to legally contract with local businesses to fairly increase the value of their brands to customers.

4. Defendant's price representations to members of the Class, such as Plaintiff's "$1.99 Delivery Fee" statement, prominently displayed on the POSTMATE's website and application are also false, misleading, and likely to deceive reasonable customers, such as Plaintiff and members of the Class, because the Service is not able to deliver from the restaurants for the stated delivery fee amount.

5. The ability to deliver restaurants or kitchens in New York City for a specific "Delivery Fee" without a "Service Fee" is highly coveted, evinced by competitors clearly and obviously disclosing both fees to customers in advertisements and on check-out screens. Contrary to Defendant's express or implied representations that it only charges a "Delivery Fee", POSTMATE's website and application charge "Service Fee".

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II. VENUE AND JURISDICTION

6. This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs.

7. Plaintiff alleges that the total claims of the individual members of the Plaintiff Class in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5). As set forth below, Plaintiff is a citizen of New York, and POSTMATES can be considered a citizen of Delaware. Therefore, diversity of citizenship exists under CAFA and diversity jurisdiction, as required by 28 U.S.C. §§ 1332(a)(1), (d)(2)(A). Furthermore, Plaintiff alleges on information and belief that defendant is not a citizen of New York, where this action is originally being filed, and that the total number of members of the proposed Plaintiff Class is greater than 100, pursuant to 28 U.S.C. §1332(d)(5)(B).

8. Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(a) because, as set forth below, Defendant conducts business in, and may be found in, this district, and Plaintiff signed-up, downloaded, and/or made purchases through the subject Services of this action in this judicial district.

## III. PARTIES

9. Plaintiff is an individual more than 18-years-old, and is a citizen of New York, resident of Manhattan County. Plaintiff respectfully requests a jury trial on all damage claims. In 2019, Plaintiff signed-up, downloaded and/or made purchases through the Service,

POSTMATES delivery website and application with advertisements that claim to be able to (1) deliver "Anything. Anytime. Anywhere.", but whose Service is actually limited to certain vendors. *See* **Exhibit 1**, *Scanned Copy of Website Marketing Page – necessary to view before sign up*, and **Exhibit 2**, *Scanned Copy of Postmates Press and Media Page's "About Postmates"*, attached hereto and incorporated herein. And (2) allow use of their Service for a set "Delivery Fee", but whose Service charges a "Service Fee" that is hidden through the checkout process by an inconspicuous box titled "Taxes and Fees". *See* **Exhibit 3**, *Scanned Copy of "1.99 Delivery Fee"*; **Exhibit 4**, *Scanned Copy of Check-Out Screen Disclosures with Hidden Fee;* **Exhibit 5**, *Scanned Copy of Hidden Fee Found,* attached hereto and incorporated herein.

10. In making purchases through the Service, Plaintiff read and relied on the material statement that the Service could deliver "Anything. Anytime. Anywhere." For example, Plaintiff downloaded the POSTMATES application believing it to be able to deliver "Anything. Anytime. Anywhere." because she read and relied on POSTMATES material statement that the Service can deliver "Anything. Anytime. Anywhere." prominently displayed on their website, application, and press releases. Plaintiff has been damaged by her purchase of the Service because the labeling and advertising for the Service was and is false and/or misleading under New York law; therefore, the Service is worth less than what Plaintiff paid for it and/or Plaintiff did not receive what she reasonably intended to receive when purchasing the Service.

11. Defendant, Postmates, Inc. ("POSTMATES") is a Delaware licensed corporation with its principal place of business located at 201 Third Street, Floor 2, San Francisco, CA 94103. POSTMATES lists with the Delaware Secretary of State a Registered Agent designated as The Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, DE

19801. Therefore, POSTMATES can be considered a "citizen" of the State of Delaware for purposes of diversity jurisdiction or diversity of citizenship.

12. POSTMATES is the owner, manufacturer and distributor of the Service, and is the company that created and/or authorized the false, misleading and deceptive labeling and advertising for the Service and is the company that promoted, marketed, and sold the Service at issue in this judicial district.

13. POSTMATES labeling and advertising relied upon by Plaintiff was prepared and/or approved by POSTMATES and its agents, and was disseminated by POSTMATES and its agents through labeling and advertising containing the misrepresentations alleged herein. The labeling and advertising for the Service was designed to encourage customers to make purchases with the Service and reasonably mislead a reasonable customer, i.e. Plaintiff and the Class.

14. Plaintiff alleges that, at all relevant times, POSTMATES and its subsidiaries, affiliates, and other related entities, as well as their respective employees, were the agents, servants and employees of POSTMATES, and at all relevant times, each acted within the purpose and scope of that agency and employment. Plaintiff further alleges on information and belief that at all times relevant herein, the distributors and retailers who delivered and sold the Service, as well as their respective employees, also were POSTMATES agents, servants and employees, and at all times herein, each was acting within the purpose and scope of that agency and employment.

15. Additionally, Plaintiff alleges that, in committing the wrongful acts alleged herein, POSTMATES, in concert with its subsidiaries, affiliates, and/or other related entities and their respective employees, planned, participated in and furthered a common scheme to induce members of the public to make purchases with the Service by means of false, misleading,

deceptive and fraudulent representations, and that POSTMATES participated in the making of such representations in that it disseminated those misrepresentations and/or caused them to be disseminated.

16. Whenever reference in this Complaint is made to any act by POSTMATES or its subsidiaries, affiliates, distributors, retailers and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of POSTMATES committed, knew of, performed, authorized, ratified and/or directed that act or transaction on behalf of POSTMATES while actively engaged in the scope of their duties.

## IV. LACK OF FORMATION

17. Plaintiff and members of the Class did not agree to the "terms and conditions" that would require submitting to arbitration.

18. Plaintiff and members of the Class signed up for POSTMATES without notice of the terms and conditions.

19. POSTMATES terms and conditions were hidden, obscure, and not obvious.

20. POSTMATES terms and conditions were not presented on any screen shown to Plaintiff and members of the Class and would require multiple clicks to access.

21. POSTMATES' hidden hyperlink to terms and conditions was on one cluttered screen that users view before they use POSTMATES.

22. POSTMATES does not require any affirmative assent to its terms and conditions, such as "click-wrap" where users would click to affirm assent.

23. Plaintiff and members of the Class signed up for POSTMATES without notice of the terms and conditions related to mandatory class arbitration.

24. Defendant's placement of the hyperlinked terms and conditions was not conspicuous enough to put Plaintiff and members of the Class on notice of the waiver of their substantial right to class action litigation for POSTMATES illegal activities.

25. POSTMATES terms and conditions include a material term limiting class action litigation.

26. Defendant did not draw attention to the other, non-visible terms that would alter what a reasonable customer would understand to be default rights, i.e., the right to bring a class action, when initiating an online transaction from their state of residence.

27. Plaintiff and members of the Class were not put on notice that there were terms and conditions different from what a reasonable customer would understand their default rights to be, i.e., the right not to arbitrate and instead bring federal or state litigation.

28. Plaintiff and members of the Class were not made aware there was a small statement under the "Sign Up" button that stated, "By clicking the Sign Up or Facebook button, you agree to our Terms of Service and Privacy Policy". *See* **Exhibit 6**, *Scanned Copy of Hidden Terms*, attached hereto and incorporated herein.

29. Plaintiff and members of the Class signed up for POSTMATES through a portal that gave no clear or obvious notice of the existence of extra terms and conditions, besides those common in the use of delivery services of goods.

30. Plaintiff and members of the Class did not have any in-person, over the phone, or any other type of communication with representatives from POSTMATES that could have put them on notice of the other, non-visible terms and conditions.

31. There is no substantial evidence or anything in the design or content of the POSTMATES website or application that would put Plaintiff or members of the Class on notice of the existence of other, non-visible terms and conditions.

32. Defendant's Service obscured and minimalized the importance of the details of the contract by increasing the size, weight, placement, and view of the physical manifestation of assent expected by the "Sign Up" button and other features on the site, e.g., multiple colorful foods and other links.

33. Defendant's Service presents Plaintiff and members of the Class with fields to enter Email and Password information in much larger and noticeable type face then the terms and conditions.

34. Defendant's hyperlinked terms and conditions was not next to the only button that will allow the user to continue since there are multiple ways of signing up, e.g., by use of a Facebook account.

35. Defendant's hyperlinked terms and conditions was not adjacent to the only button that was intended to manifest assent, e.g., not near both "Sign Up" and "Facebook" links, which could lead a user to think only Facebook terms apply.

36. Defendant did not notify Plaintiff or members of the Class of the other, non-visible terms by website notice when they signed in to use the Service after signing up, e.g., no notice at time of sale.

37. Defendant did not notify Plaintiff or members of the Class of the other, non-visible terms by email or direct mail after signing up.

# V. FACTUAL ALLEGATIONS

38. POSTMATES manufactures, distributes, markets, advertises, and sells the Service, which claims to be able to (1) deliver "Anything. Anytime. Anywhere." when in fact, it is not, because the Service will not deliver anything, anytime, anywhere, and (2) allow use of their Service for a set "Delivery Fee", but whose Service charges other non-tax variable fees.

39. Defendant's statements that it can deliver "Anything. Anytime. Anywhere." for a set "Delivery Fee" prominently displayed on the Service's main, primary screen (i.e., it is necessary to view to use the Service) and its other marketing, including packaging and/or labeling, is false, misleading, and likely to deceive reasonable customer, such as Plaintiff and members of the Class, because the Service does not allow delivery of "Anything. Anytime. Anywhere.", as evinced by the options available in the Service, and also charges more than a simple "Delivery Fee", as evinced by a hidden "Service Fee".

40. Delivery of "Anything. Anytime. Anywhere." would mean to a reasonable NYC customer that delivery was possible for anything sold in the local NYC stores to a NYC location since it is reasonable to believe a business could provide such a service, since competitors exist and do provide such services (e.g., TaskRabbit, Uber). Contrary to Defendant's express or implied representations, the Service does not provide for delivery of "Anything. Anytime. Anywhere.", even in local NYC.

41. Delivery for a set "Delivery Fee" would mean to a reasonable NYC customer that delivery was possible for that price, plus tax and cost of goods since it is reasonable to believe a business could provide such a service, since competitors exist and do provide such services or disclose the use of an extra "Service Fee" conspicuously without needing extra clicks (e.g.,

Seamless, Uber Eats). Contrary to Defendant's express or implied representations, the Service does not provide for delivery for only a "Delivery Fee".

42. The Service does not provide delivery of "Anything. Anytime. Anywhere.".  The Service only provides delivery from a specific set of vendors at specified times and locations, and are thus not delivering "Anything. Anytime. Anywhere.", thereby causing the Service to fail to be able to deliver "Anything. Anytime. Anywhere."

43. The Service does not provide delivery for a set "Delivery Fee".  The Service provides delivery for a fee that includes the "Delivery Fee" and a hidden "Service Fee", and are thus not delivering for a set fee based on only the "Delivery Fee", thereby causing the Service to fail to be able to deliver for a set "Delivery Fee".

44. Defendant manufactures, markets, advertises, distributes and sells the Service on the world-wide web throughout the United States and in this judicial district claiming to be able to deliver "Anything. Anytime. Anywhere." specifically, on the website and application for the Service.

45. Defendant provides, markets, advertises, distributes and sells the Service on the world-wide web throughout the United States and in this judicial district claiming to be able to deliver for a set "Delivery Fee" specifically, on the website and application for the Service.

46. As a result, through a variety of advertising, including but not limited to the website, application, and other packaging and labeling of the Service, POSTMATES has made false and misleading material statements and representations regarding the Service that have been relied upon by Plaintiff and members of the Class.

47. Simply put, the Service does not deliver from local NYC vendors for the fee that was shown to Plaintiff and members of the Class, and is thus not able to deliver "Anything. Anytime.

Anywhere." for a set "Delivery Fee". Therefore, Defendant's advertising and labeling statement that the Service is able to deliver "Anything. Anytime. Anywhere." for a set "Delivery Fee" is deceptive and likely to mislead reasonable customers, such as Plaintiff and members of the Class.

48. Plaintiff, like members of the Class, signed-up, downloaded, and/or made purchases through the Service relying on the material misrepresentation that it was able to deliver "Anything. Anytime. Anywhere." for a set "Delivery Fee" at the time of purchase.

49. Plaintiff based her purchases upon POSTMATES material statement that the Service could deliver "Anything. Anytime. Anywhere." for a set "Delivery Fee", which she read on the front labeling of the Service (i.e., website and application screens that are necessary to view to use the Service), and relied upon prior to making her purchase.

50. Plaintiff would not have sign-up for, downloaded, and/or made purchases through the Service if she had known that the Defendant's Product is not able to deliver "Anything. Anytime. Anywhere." because it cannot deliver from local NYC vendors, and is not able to deliver for a set "Delivery Fee" because it charges extra hidden "Service Fees".

51. Plaintiff and members of the Class have been economically damaged by their purchase of the Product because it does not deliver "Anything. Anytime. Anywhere." for a set "Delivery Fee".

52. At a minimum, Plaintiff contends that Defendant should cease labeling the Service as being able to delivery "Anything. Anytime. Anywhere." for a set "Delivery Fee", in line with competitors' disclosures.

53. Plaintiff therefore brings this class action to secure, among other things, equitable

relief and damages for the Class against POSTMATES for false and misleading advertising in violation of NEW YORK'S GENERAL BUSINESS LAW § 349, along with Unjust Enrichment.

**VI. CLASS ACTION ALLEGATIONS**

54. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

55. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this class action and seeks certification of the claims and certain issues in this action on behalf of a Class defined as:

> **all New York persons (i.e., consumers and non-consumers) who have used Postmate's services, during the period extending from January 15, 2012, through and to the filing date of this Complaint.**

56. Plaintiff reserves the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

57. Defendant's practices and omissions were applied uniformly to all members of the Class, including any subclass arising out of the New York statutory claims alleged herein, so that the questions of law and fact are common to all members of the Class and any subclass.

58. All members of the Class and any subclass were and are similarly affected by the deceptive labeling of the Service, and the relief sought herein is for the benefit of Plaintiff and

members of the Class and any subclass.

59. Based on the annual sales of the Service and the popularity of the Service, it is apparent that the number of customers in both the Class and any subclass is so large as to make joinder impractical, if not impossible.

60. Questions of law and fact common to the Plaintiff Class and any subclass exist that predominate over questions affecting only individual members, including, inter alia:

        a. Whether Defendant's practices and representations related to the marketing, labeling and sales of the Service were unfair, deceptive and/or unlawful in any respect, thereby violating NEW YORK'S GENERAL BUSINESS LAW § 349;

        b. Whether Defendant's practices and representations related to the marketing, labeling and sales of the Service amounted to unjust enrichment;

        c. Whether Defendant's conduct as set forth above injured consumers and non-consumers and if so, the extent of the injury.

61. The claims asserted by Plaintiff in this action are typical of the claims of the members of the Plaintiff Class and any subclass, as the claims arise from the same course of conduct by Defendant, and the relief sought within the Class and any subclass is common to the members of each.

62. Plaintiff will fairly and adequately represent and protect the interests of the members of the Plaintiff Class and any subclass.

63. Plaintiff is competent and experienced in both consumer protection and class action litigation.

64. Certification of this class action is appropriate under Federal Rule of Civil Procedure 23 because the questions of law or fact common to the respective members of the

Class and any subclass predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for a fair and efficient decree of the claims.

65. Absent a class action, it would be highly unlikely that the representative Plaintiff or any other members of the Class or any subclass would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

66. Certification also is appropriate because Defendant acted, or refused to act, on grounds generally applicable to both the Class and any subclass, thereby making appropriate the relief sought on behalf of the Class and any subclass as respective wholes. Further, given the large number of customers of the Service, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

67. A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender.

68. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

## VII. FIRST CAUSE OF ACTION:

## VIOLATION OF NEW YORK'S

## GENERAL BUSINESS LAW § 349

69. Plaintiff re-alleges and incorporates by reference the allegations set forth in each

of the preceding paragraphs of this Complaint.

70. Plaintiff is informed and believes, and thereon alleges, that Defendant engaged in extensive marketing and advertising, including, but not limited to, print, electronic media, television, internet, and direct marketing through agents, to promote and sell the Service as being able to deliver "Anything. Anytime. Anywhere." for a set "Delivery Fee" when it is not, because it cannot deliver from specific local NYC vendors and charges hidden fees behind a set "Delivery Fee".

71. This cause of action is brought on behalf of Plaintiff and members of the general public pursuant to New York's General Business Law § 349, which provides. "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful" – Defendant's act or practices are deceptive if they are (i) consumer-oriented and misleading in a material respect, and (ii) caused injury to Plaintiff(s). Stutman v. Chemical Bank, 95 N.Y.2d 24, 29 (N.Y. 2000).

72. Defendant committed unfair deceptive business acts and/or practices. Defendant and its related entities represent themselves as being a reputable, reliable delivery service of food products. However, the utility of Defendant's practices related to the delivery, marketing, and distribution of the Service for the purpose of selling is negligible, if any, when weighed against the economic harm to the general public, Plaintiff, and members of the Class.

73. Defendant committed a deceptive act or practice which has a capacity, tendency, and/or likelihood to deceive or confuse reasonable customers in that such customers had a good faith basis for believing the Services were marketed, distributed, and sold in a reliable manner, consistent with the standards of Defendant's industry.

74. Defendant's practices related to food delivery, marketing, and distribution of

the Services for the purpose of selling, in such manner as set forth in detail above, constitute

unfair and/or deceptive business. Plaintiff and members of the general public were and are likely

to be deceived by Defendant as set forth herein.

75. Plaintiff, on behalf of himself and members of the general public, seeks an order

of this Court:

>       (a) Enjoining Defendant from continuing to engage, use, or employ any unjust,
>       unfair and/or deceptive business acts or practices related to food delivery,
>       marketing, and distribution of the Services for the purpose of selling in such
>       manner as set forth in detail above; and
>       (b) Restoring all monies that may have been acquired by Defendant as a result of
>       Such unjust, unfair and/or deceptive acts or practices.
>       (c) Granting punitive damages to deter Defendant and future Defendants.

76. Plaintiff and members of the general public may be irreparably harmed and/or

denied an effective and complete remedy if such an order is not granted. The unfair and/or

deceptive acts and practices of Defendant, as described above, present a serious threat to

Plaintiff and members of the general public.

77. The harmful impact upon members of the general public and the Class who

purchased and used the Products for their intended and foreseeable purpose far outweighs any

reasons or justifications by Defendant for their practices related to food delivery, marketing,

and distribution of the Services for the purpose of selling. Defendant had an improper motive

(profit before accurate marketing) in their practices related to food delivery, marketing,

distribution, and sale of the Services, as set forth in detail above.

78. The utilization of such unfair business acts and practices was and is under the

sole control of Defendant, and was fraudulently and deceptively hidden from members of the general public in their labeling, advertising, promotion and/or marketing of the Services.

79. As purchasers and customers of Defendant's Services, and as members of the general public in New York who purchased the Services and used them for their intended and foreseeable purpose, Plaintiff and members of the Class are entitled to and do bring this class action seeking all available remedies under New York's General Business Law, including declaratory, injunctive, and other equitable relief, as well as attorneys' fees and costs.

80. As a result of Defendant's violation of New York's General Business Law, moreover, Plaintiff and the Class are entitled to restitution for out-of-pocket expenses and economic harm. Plaintiff and members of the Class are further entitled to pre-judgment interest as a direct and proximate result of Defendant's wrongful conduct. The amount of damages suffered as a result is a sum certain and capable of calculation and Plaintiff and members of the Class are entitled to interest in an amount according to proof.

## VIII. SECOND CAUSE OF ACTION:

## UNJUST ENRICHMENT

81. Plaintiff alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint, and alleges now the same allegations above regarding POSTMATES, noting specifically that the allegations include that POSTMATES injured business clients (e.g., partnerships, corporations) as well as unaffiliated individuals in their individual capacity. Plaintiff alleges and incorporates all allegations made above.

82. Plaintiff is informed and believes and thereon alleges that Defendant was enriched by customers by using advertisements stating delivery was available for "Anything. Anytime. Anywhere." for only a "Delivery Fee" since it gained revenue from clients by inducing

purchases and getting clients to view, rely on, download, give masses of data, and/or make purchases through the Service.

83. Defendant's enrichment was at the Plaintiff's expense since it was Plaintiff who was paying a premium for the basic Service that POSTMATES provided, instead of the cost that a reasonable customer would pay to use a business similar to POSTMATES that (1) does not deliver "Anything. Anytime. Anywhere." and (2) includes a "Service Fee" with a "Delivery Fee".

84. Enrichment equity and good conscience should require restitution because the failure of the POSTMATES Service to perform as advertised by Defendant has caused Plaintiff and members of the Class economic damages as herein described, in opposition to expectations that the Service would perform as advertised, i.e., deliver "Anything. Anytime. Anywhere." and for only a "Delivery Fee".

85. Contracts between Defendant and Plaintiff and members of the Class do not provide for subject matter or remedies in case of Defendant's misrepresentations alleged hereto, nor is there another tort action available for non-consumer Plaintiffs.

86. Plaintiff and members of the Class seek all available remedies and damages for Defendant's unjust enrichment.

## IX. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, prays for relief pursuant to each cause of action set forth in this Complaint as follows:

1. For an order certifying that the action may be maintained as a class action, certifying Plaintiff as representative of the Class, and designating counsel for the Class;

2. For an award of equitable relief as follows:

(a) Enjoining Defendant from making any claims on the Service found to violate the New

York General Business Law;

(b) Requiring Defendant to make full restitution of all monies wrongfully obtained

as a result of the conduct described in this Complaint; and

(c) Requiring Defendant to disgorge all ill-gotten gains flowing from the conduct

described in this Complaint.

3. For actual and punitive damages to be determined at trial;

4. For reasonable attorney's fees;

5. For an award of costs;

6. For any other relief the Court might deem just, appropriate, or proper; and

7. For pre- and post-judgment interest on any amounts awarded.

## X. JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable.


**Respectfully Submitted,**

Dated: May 01, 2019              By: /s/ Matthew N. Bobrow

Matthew N. Bobrow, Esq.

New York Bar No.: 5450705

*matthew.bobrow@law.nyls.com*

125 East 4th Street, Apartment 16

New York, NY 10003

(908) 610-5536

*Attorney for Plaintiff and the Proposed Class*