**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

FELD, et al.,

*Plaintiff*,

v.

POSTMATES, INC.,

*Defendant.*

Case No. 1:19-cv-03899 (PKC)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT POSTMATES INC.'S**
**MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS**

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ................................................................................................ ii

**PRELIMINARY STATEMENT** ......................................................................................... 1

**FACTUAL BACKGROUND** .............................................................................................. 2

    I.    THE POSTMATES SERVICE AND ACCOUNT CREATION PROCESS ........................................... 2

    II.   POSTMATES TERMS OF SERVICE AND THE ARBITRATION AGREEMENT ............................... 4

**ARGUMENT** ...................................................................................................................... 6

    I.    POSTMATES AND PLAINTIFF ENTERED INTO A VALID AND ENFORCEABLE ARBITRATION

    AGREEMENT ................................................................................................................ 7

    II.   PLAINTIFF'S CLAIMS ARE WITHIN THE SCOPE OF THE AGREEMENT ................................... 14

**CONCLUSION** ................................................................................................................... 16

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Applebaum v. Lyft, Inc.*,
263 F. Supp. 3d 454 (S.D.N.Y. 2017) ............................................................... 8, 14

*AT & T Techs., Inc. v. Commc'ns Workers*,
475 U.S. 643 (1986) ............................................................................................ 14

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) .............................................................................................. 6

*Crawford v. Beachbody, LLC*,
No. 14CV1583–GPC(KSC), 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ............................ 13

*DuBoisv. Macy's East Inc.*,
338 Fed. Appx. 32 (2d Cir. 2009) .......................................................................14

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612 (2018) ........................................................................................... 6

*Fteja v. Facebook*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012) ................................................................... 13

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000) ................................................................................................. 7

*McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*,
858 F.2d 825 (2d Cir. 1988) ............................................................................14-15

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) .............................................................................7-11, 14

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ............................................................................................... 7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .............................................................................................. 6, 7

*Nat'l Union Fire Ins. v. Belco Petroleum Corp.*,
88 F.3d 129 (2d Cir. 1996) .................................................................................... 7

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) ...................................................................... 11, 12, 13

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
  369 F.3d 645 (2d Cir. 2004)............................................................................ 15, 16

*Rent-A-Center, W., Inc. v. Jackson*,
  561 U.S. 63 (2010)............................................................................................ 6-7

*Schnabel v. Trilegiant Corp.*,
  697 F.3d 110 (2d Cir. 2012)............................................................................ 8, 9

*Sgouros v. TransUnion Corp.*,
  817 F.3d 1029 (7th Cir. 2016) ............................................................................ 8

*Specht v. Netscape Commc'ns Corp.*,
  306 F.3d 17 (2d Cir. 2002)................................................................................... 8

*Starke v. Gilt Groupe, Inc.*,
  No. 13–CV–5497, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ........................... 13

*Starke v. SquareTrade, Inc.*,
  913 F.3d 279 (2d Cir. 2019)................................................................................ 12

*Swift v. Zynga Game Network, Inc.*,
  805 F. Supp. 2d 904 (N.D. Cal. 2011) ................................................................ 13

*Vera v. Saks & Co.*,
  335 F.3d 109 (2d Cir. 2003)................................................................................ 15

*WorldCrisa Corp. v. Armstrong*,
  129 F.3d 71 (2d Cir. 1997).................................................................................. 14

## STATUTES

9 U.S.C. § 2 ............................................................................................................ 6

9 U.S.C. § 4 ............................................................................................................ 7

## OTHER AUTHORITIES

Restatement (Second) of Contracts § 19 ................................................................. 9

## PRELIMINARY STATEMENT

This Court does not have jurisdiction over this dispute because Plaintiff Jamie Feld's ("Plaintiff") claims are covered by a valid and binding arbitration agreement that she assented to when she created her Postmates account. Plaintiff filed this consumer class action against Postmates Inc. ("Postmates") on May 1, 2019, alleging violations of New York's General Business Law § 349 and unjust enrichment on behalf of herself and a putative class comprised of "all New York persons (i.e. consumers and non-consumers) who have used Postmate's [sic] services, during the period extending from January 15, 2012 through and to the filing of this Complaint." Compl. ¶ 55. The crux of Plaintiff's complaint is that Postmates' "Anything. Anytime. Anywhere." advertising statement is false and misleading because Postmates only provides delivery from "a specific set of vendors at specified times and locations." *Id.* at ¶ 2, 42. For a variety of reasons, Plaintiff's claims lack any merit. But as an initial matter, her attempt to bring them before this court directly violates the arbitration agreement she entered into when she signed up for her Postmates account.

Plaintiff alleges that she "signed-up, downloaded, and/or made purchases" through Postmates in 2019. *Id.* ¶ 9. This renders her claim improperly before this Court because at all relevant times the Postmates Terms of Service ("TOS") included a broad arbitration agreement and class action waiver. Upon creating her Postmates account, Plaintiff was presented with a sign-up flow that clearly notified her of the contractual nature of the TOS and allowed her the opportunity to review the terms before manifesting her consent. The Second Circuit has found similar sign-up flows binding and enforceable, and the Supreme Court has long recognized the liberal policy in favor of enforcing arbitration agreements, as evidenced by the Federal

1

Arbitration Act ("FAA"). Plaintiff should be compelled to submit her claims to individual arbitration and this action should be dismissed.

## FACTUAL BACKGROUND

### I.  The Postmates Service and Account Creation Process

Postmates provides and maintains an online marketplace (https://postmates.com/) and mobile application ("Postmates App" or "App") on which individual customers (collectively, "buyers"); restaurants, retail stores, and other brick-and-mortar merchants (collectively, "merchants"); and independent contracting couriers connect to facilitate the purchase, fulfillment, and, when applicable, delivery of goods from merchants to buyers. Declaration of Ashley Campbell ("Campbell Decl.") ¶ 2. Launched in 2011, Postmates now operates in 2,940 US cities, as well as Mexico, and provides access to over 250,000 merchants.[1] Before a potential buyer is able to place an order using the Postmates online marketplace or App, they must create an account. Campbell Decl. ¶ 3. Potential buyers can create an account through the Postmates website at https://postmates.com/ or on the Postmates App. Potential buyers cannot create an account without agreeing to Postmates' TOS and Privacy Policy. *Id.*

On the Postmates online marketplace sign-up screen, there are two blank fields requiring potential buyers to enter their email address and password. Campbell Decl. ¶ 6. Below these fields, the following statement is displayed, "By clicking the Sign Up or Facebook button, you agree to our **Terms of Service** and **Privacy Policy**." *Id.* The sentence is presented in light grey typeface, with bolded phrases "Terms of Service" and "Privacy Policy" displayed in contrasting black typeface to denote hyperlinks. *Id.* No potential buyer can sign up for, or place an order using, the Postmates online marketplace without clicking either the Sign Up or Facebook button.

---

[1] *See* Postmates' Press & Media,  https://postmates.com/press-and-media.

Postmates website sign-up screen

Similarly, on the Postmates App, potential buyers can only sign up using their email address or their preexisting Facebook account.[2] Above these two options the following statement is displayed, "By tapping the Sign Up or Facebook button, you agree to our **Terms of Service and Privacy Policy**." Campbell Decl. ¶ 7. The sentence is presented in black typeface, with the bolded phrases "Terms of Service" and "Privacy Policy" displayed in contrasting turquoise blue typeface to denote hyperlinks on a contrasting pink backdrop. *Id.* No potential buyer can sign up for Postmates' service, or use the Postmates App, without clicking either the Sign Up or Facebook button. *Id.*

---

[2] Even if a potential buyer clicks the "Skip for Now" button, they cannot place an order without signing up through a similar sign-up interface that also states "By tapping Sign Up or Facebook, you agree to the Terms of Service & Privacy Policy."



Postmates App sign-up screen

On both the Postmates website and Postmates App, when a potential buyer clicks the hyperlinks, they are taken to a page presenting Postmates' TOS.

## II.  Postmates Terms of Service and the Arbitration Agreement

At all relevant times the Postmates TOS have included a mandatory arbitration provision and a class action/class arbitration waiver. Campbell Decl. ¶ 11. The Complaint does not specify when in 2019 Plaintiff "signed-up, downloaded, and/or made purchases" through Postmates, however the current version of the TOS went into effect on January 18, 2019.[3] Compl. ¶ 9; Campbell Decl. ¶ 4. The first paragraph on the first page of the TOS in bolded typeface unequivocally informs potential buyers that they are agreeing that: "**all disputes between you**

---

[3] The previous version of the TOS went into effect on July 25, 2018, and contained identical arbitration agreement and class action waiver language. Moreover, the TOS in Section 18 state "You further acknowledge and agree that unless the Dispute Resolution and Arbitration Award section herein is materially different from any prior arbitration provision with Postmates to which you may be bound, your acceptance of these Terms does not create a renewed opportunity to opt out of arbitration." Campbell Decl. ¶ 17; Ex. B.

and Postmates rising out of or relating to these Terms or your use of the PLATFORM ("the Disputes") will be resolved by BINDING ARBITATION. For such Disputes YOU waive YOUR RIGHT TO bring a class or representative action, or GO TO COURT under these Terms." Campbell Decl. ¶ 12[4] (emphasis in original). This statement then refers potential buyers to Section 17 of the TOS ("Dispute Resolution and Arbitration") "for details regarding [their] agreement to individually arbitrate any Disputes with Postmates." *Id.*

Section 17.2 designates the process for resolving disputes between the parties. It states that "**every Dispute** arising in connection with these Terms will be resolved by **binding individual arbitration**"[5] Campbell Decl. ¶ 13 (emphasis added). This section goes on to describe the arbitration process. It also identifies the scope of the arbitration agreement, explaining that it covers "all claims arising out of or relating to any aspect of these Terms, the Platform, or your relationship with us, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, and regardless of whether a claim arises during or after the termination of these Terms." *Id.* The section concludes with the following confirmatory language:

> **YOU UNDERSTAND AND AGREE THAT, BY ENTERING INTO THESE TERMS, YOU AND POSTMATES ARE EACH WAIVING THE RIGHT TO GO TO COURT OR TO PARTICIPATE IN A CLASS OR REPRESENTATIVE ACTION.**

*Id.* (emphasis in original).

---

[4] This language is identical in the July 25, 2018 version of the TOS.

[5] The TOS do include an exception permitting the parties to "(1) Bring an individual action in small claims court; (2) Pursue an enforcement action through the applicable federal, state, or local agency if that action is available; or (3) File suit in a court of law to address an intellectual property infringement claim." Campbell Decl. ¶ 17; Ex. B. These are the only narrow exceptions to the arbitration agreement.

Moreover, Section 17.7 contains a class action waiver, limiting a user's and Postmates' ability to bring a class or similarly representative proceeding. Specifically, Section 17.7 states:

> **YOU AND POSTMATES AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.**

Campbell Decl. ¶ 15 (emphasis in original).

This section also prohibits the arbitrator from "consolidat[ing] more than one person's claims…[or] presid[ing] over any form of a representative or class proceeding. *Id*. Postmates' TOS designate that all arbitrations will be administered by JAMS and delegate broad authority to the arbitrator to decide all issues, including arbitrability. Campbell Decl. ¶ 14. Potential buyers can opt out of the arbitration and class action waiver provisions by submitting a request to Postmates within 30 days of creating an account. TOS ¶ 17.8; Campbell Decl. ¶ 16. Plaintiff did not opt out of the arbitration and class action waiver provisions. Campbell Decl. ¶ 16. The TOS also contain a choice of law provision stating that "[t]hese terms are governed by the laws of the State of California without regard to conflict of law principles." TOS ¶ 20.

## ARGUMENT

Postmates' arbitration agreement is binding and enforceable. The Federal Arbitration Act ("FAA") provides that "a written provision in any…contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract…shall be valid, irrevocable and enforceable." 9 U.S.C. § 2. The FAA was enacted to "overcome judicial resistance to arbitration," *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006), and "establishes 'a liberal []policy favoring arbitration agreements.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Arbitration is fundamentally a matter of contract, *see Rent-A-Center, W.,*

*Inc. v. Jackson*, 561 U.S. 63, 67 (2010), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25. In agreeing to arbitrate a claim, "a party does not forgo [its] substantive rights" but "only submits their resolution to an arbitral, rather than a judicial, forum. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

Under the FAA, a dispute is arbitrable if the following conditions are met: (1) there is a valid agreement to arbitrate under the contract and (2) the particular dispute falls within the scope of the arbitration agreement. *See Nat'l Union Fire Ins. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996). Provided that the court does not take issue with "the making of the agreement for arbitration or the failure to comply therewith," it must grant a party to the agreement's motion to compel arbitration "in accordance with the terms of the agreement." 9 U.S.C. § 4. The party seeking to avoid arbitration has the burden of showing that the arbitration provision is not enforceable. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). Here, both conditions are met, and Plaintiff cannot meet her burden to show that the arbitration provision is not enforceable.

## I.   Postmates and Plaintiff Entered into a Valid and Enforceable Arbitration Agreement

Plaintiff and Postmates entered into a valid agreement containing an arbitration clause and class action waiver when Plaintiff signed up for a Postmates account. Courts must enforce a motion to compel arbitration "where the notice of the arbitration provision [is] reasonably conspicuous and manifestation of assent [is] unambiguous." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017). Postmates' arbitration provision satisfies this standard.

First, Postmates provides "reasonably conspicuous notice" of the arbitration agreement. Campbell Decl. ¶ 12. Potential users can have actual notice of the arbitration terms or inquiry notice to fulfill this prong. Even where a potential user does not have actual notice of the contractual terms, "the offeree will still be bound by the agreement if a reasonably prudent user would be on inquiry notice of the terms." *Meyer*, 868 F.3d at 74–75. Central to the inquiry notice analysis is the "clarity and conspicuousness of the arbitration terms," which "in the context of web-based contracts…are a function of the design and content of the relevant interface." *Id.* (internal quotation marks and citation omitted). Where terms are not displayed on the page courts look for "a clear prompt directing users to read [the terms]." *See Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 467 (S.D.N.Y. 2017) (citing *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1035 (7th Cir. 2016)). That is, the hyperlinked terms must be conspicuous and placed in spatial and temporal proximity to the prompt or "notice language." *Meyer,* 868 F.3d at 74-75. Here, Plaintiff alleges that she "signed up for Postmates without notice of the terms and conditions." Compl. ¶ 18. Assuming arguendo that she did not have actual notice of the TOS, she was still on inquiry notice of the contractual terms by virtue of the placement of the notice language and the availability of the TOS prior to the creation of her account. Campbell Decl. ¶ 12.

Plaintiff also manifested her assent to the terms of Postmates' arbitration agreement. Manifestation of assent may be demonstrated "by written or spoken word or by conduct."[6] *Meyer,* 868 F.3d at 74 (quoting *Specht v. Netscape Commc'ns Corp.,* 306 F.3d 17, 29 (2d Cir. 2002)). Mutual manifestation of assent is measured "by an objective standard that takes into

---

[6] Postmates has applied California contract law to its analysis given the California choice of law provision in the TOS. New York law is the only other law that could reasonably be applied to this contract, and notably the Second Circuit has determined that "New York and California apply 'substantially similar rules for determining whether the parties have mutually assented to a contract term.'" *Meyer*, 868 F.3d at 74 (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012)).

account both what the offeree said, wrote, or did and the transactional context in which the offeree verbalized or acted." *Id.* (citation omitted). In online contracts, like written contracts, manifestation of assent can be accomplished by "words or silence, action or inaction," so long as the user "intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 120 (2d Cir. 2012) (quoting *Restatement (Second) of Contracts* § 19(2) (1981)). Plaintiff manifested her assent to the TOS, including the arbitration provision and class action waiver, and Privacy Policy by affirmatively entering her information, clicking the sign-up (or Facebook) button, and completing the sign-up process for her Postmates account.

Postmates' sign-up flow satisfies the reasonably conspicuous notice and assent requirements. Campbell Decl. ¶¶ 6-9. The Second Circuit addressed a similarly structured sign-up flow in *Meyer*. There*,* the Uber account sign-up flow at issue required the potential user to click a button marked "Register" underneath which there was notice language stating "By creating an Uber account, you agree to the TERMS OF SERVCE & PRIVACY POLICY." *Meyer*, 868 F.3d at 76*.* The TOS and privacy policy were hyperlinked. *Id.* at 71. The court found that the design of the screen containing the "Register" button and the notice language used constituted reasonable notice under California law. *Id.* at 78*.* The court considered the following factors in making this determination: the uncluttered screen, containing only the necessary registration fields and the warning language; the visibility of the entire screen at one time; the hyperlinks to the terms of service and the privacy policy included in the warning language; the "bright white background" and the contrasting hyperlinks; the location of the hyperlinks "directly adjacent" to the button to manifest assent; and the temporal coupling of the notice and the assent. *See id.* In addition, the court considered the language "[b]y creating an Uber account,

you agree" to be a prompt instructing a potential user to read the hyperlinked contractual terms before clicking the button. *Id.* at 78-79. The court found that by clicking the "Register" button, the potential user both created an account and manifested his unambiguous assent to the terms of service. *Id.* at 80.

The same factors the Second Circuit said constitute clear and conspicuous notice in *Meyer* are present in the Postmates sign-up process, both online and in the App. Plaintiff at minimum had inquiry notice of the TOS and manifested her assent by proceeding to create a Postmates account. Plaintiff was presented with a sign-up page that was uncluttered and contained only the fields to enter her email address and password or link to her preexisting Facebook account. Campbell Decl. ¶ 6. The Postmates sign-up page did not require her to scroll down the screen to see the notice language. In fact, the notice language was spatially coupled, placed either directly below (website) or directly above (Postmates App) the sign-up fields and contained the phrase "[b]y clicking the Sign Up or Facebook button, you agree…" prompting her to read the hyperlinked TOS and Privacy Policy contractual provisions. Campbell Decl. ¶¶ 6-8. As in *Meyer* the notice language was temporally coupled with the account creation fields— providing Plaintiff with the opportunity to review the TOS prior to creating her account. *Meyer*, 868 F.3d at 80. Moreover, the hyperlinks were presented in contrasting typeface, denoting hyperlinks. *Id.* at 78. When Plaintiff clicked on the button to create her Postmates account, she thus manifested her unambiguous assent the TOS and entered into the valid and enforceable arbitration agreement with Postmates contained therein.

A side-by-side comparison of the sign-up flows in *Meyer* and this case show their similarities:





Uber Payment Picture: *Meyer v. Uber Techs., Inc.*,            Postmates App
    868 F.3d 66, 81 (2d Cir. 2017)

By contrast, Postmates' sign-up flow is dissimilar from those that the Second Circuit has

found fail to provide a potential user with adequate notice. In *Nicosia v. Amazon.com, Inc.,* the

Second Circuit examined an Amazon order page that required a user to click a button marked

"Place your order," with the notice language "[b]y placing your order, you agree to

Amazon.com's … conditions of use" displayed in small text under the webpage heading on the

order page. 834 F.3d 220, 236–37 (2d Cir. 2016). Amazon argued that the arbitration provision

included in the hyperlinked "conditions of use" bound the user who placed an order on the page.

*Id.* at 226-27. The court held that "reasonable minds could disagree" that the design of the order

page screen containing the "[p]lace your order" and notice language provided sufficient notice

under Washington law. *Id.* at 236-37. The court considered the following factors in remanding

11

the case to the lower court: the notice language was not "bold, capitalized, or conspicuous *in light of the whole webpage*"; the screen was cluttered with "between fifteen and twenty-five links" and "text [] displayed in at least four font sizes and six colors;" multiple buttons and promotional advertisements distracted from the notice language; and customer information, including personal address and credit card information, displayed on the order page also distracted from the notice language. *Id.* at 237 (emphasis added).[7] As seen below, the sign-up flow in *Nicosia* is not like the Postmates sign-up flow:



---

[7] *See Starke v. SquareTrade, Inc.*, 913 F.3d 279, 293 (2d Cir. 2019) (finding no reasonable notice where the user was not provided with terms and conditions on the order page prior to sale, the post-sale email containing the "Terms and Conditions" hyperlink was "cluttered with diverse text, displayed in multiple colors, sizes and fonts, and feature[d] various buttons and promotional advertisements that distract the reader from the relevant hyperlink." The user was not signaled to click the hyperlinked Terms and Conditions "buried at the bottom of the email" and the hyperlink was neither "spatially nor temporally coupled" with the "Add to Cart" button).

Unlike the warning language buried under the webpage heading in *Nicosia*, the Postmates warning language was placed either directly below (website) or directly above (Postmates App) the sign-up fields. Campbell Decl. ¶¶ 6-9; *Nicosia*, 834 F.3d at 237. Furthermore, unlike the order page cluttered with "between fifteen and twenty-five links," "text in at least four font sizes and six colors," and multiple buttons and advertisements in *Nicosia*, the Postmates sign-up screen only contained the warning language and the necessary fields to enter her email address and password or link to her preexisting Facebook account. Campbell Decl. ¶ 6; *Nicosia*, 834 F.3d at 237. The Postmates sign-up screen did not display information that would distract the Plaintiff, or any other potential user, from the notice language.

This Court and numerous other courts have likewise found that sign-up flows similar to Postmates' provided reasonable notice of the contractual terms of service. *See, e.g.*, *Starke v. Gilt Groupe, Inc.*, No. 13–CV–5497, 2014 WL 1652225, at *1 (S.D.N.Y. Apr. 24, 2014) (holding arbitration clause in "terms of use" binding where consumer clicked "Shop Now" button next to statement that informed user that "the consumer . . .  agrees to be bound by the 'Terms of Membership,'" which were available next to button as a hyperlink); *Fteja v. Facebook*, 841 F. Supp. 2d 829, 834, 841 (S.D.N.Y. 2012) (holding a forum selection clause binding where the user clicked a "sign up" button which stated that clicking the button meant agreeing to their Terms of Service); *Crawford v. Beachbody, LLC*, No. 14CV1583–GPC(KSC), 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (holding a forum selection clause binding where consumer clicked on button marked "Place Order" and above button was statement informing user that by clicking the button, user was subject to website's "terms and conditions," which were available on the same screen via hyperlink); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 908, 912 (N.D. Cal. 2011) (holding an arbitration clause enforceable where user clicked on

a button marked "accept," below which was statement in small grey font indicating that clicking on button meant accepting hyperlinked "terms of service").

It does not matter whether Plaintiff took the time to read the TOS because they were presented to her prior to account creation, she was provided with ample notice of the contractual terms, and she manifested her agreement. *See Meyer*, 868 F.3d at 79-80 ("A reasonable user would know that by clicking the registration button, he was agreeing to the terms and conditions accessible via the hyperlink, whether he clicked on the hyperlink or not."). Accordingly, Plaintiff had at minimum inquiry notice of the contractual terms and manifested her agreement by clicking to create an account. Both she and Postmates are bound by the terms of that agreement.

## II.  Plaintiff's Claims are Within the Scope of the Agreement

The claims Plaintiff seeks to bring are also within the scope of her arbitration agreement with Postmates. Arbitration agreements are fundamentally a matter of contract. See *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d at 463–64 ("Arbitration clauses are a matter of contract law and, if valid, should be enforced.") (quoting *DuBois v. Macy's East Inc.*, 338 Fed. Appx. 32, 33 (2d Cir. 2009) (summary order)); *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) ("[T]he existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."). The Supreme Court has distinguished between broadly written arbitration clauses that designate all disputes to arbitration and those that purport to make only a narrow set of issues arbitrable, finding that "the strong federal presumption in favor of arbitrability applies with greater force when an arbitration clause is a broad one." *McDonnell Douglas Fin. Corp. v.*

*Pennsylvania Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988) (citing *AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986)).

The arbitration agreement Plaintiff agreed to is a broad one and covers her claims here. Postmates' TOS state that the arbitration provision applies to "every dispute arising in connection with [the TOS]." Campbell Decl. ¶ 13. The TOS go on to clarify that "[the] agreement to arbitrate disputes includes all claims arising out of or relating to any aspect of these [TOS], the [Postmates] Platform, or your relationship with [Postmates], whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, and regardless of whether a claim arises during or after the termination of these Terms." *Id.* Moreover, the parties also delegated all issues, including the issue of arbitrability, to the arbitrator. *Id.* ¶ 14. There can be no dispute as to the breadth of the arbitration agreement entered into by Plaintiff and Postmates. Courts regularly enforce similar arbitration agreements. *See, e.g.*, *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 649, 654 (2d Cir. 2004) ("any controversy, claim or dispute between the Parties arising out of or relating in any way to this Agreement"); *Vera v. Saks & Co.*, 335 F.3d 109, 117 (2d Cir. 2003).

Plaintiff claims that Postmates "committed unfair deceptive business acts" in violation New York Gen. Bus. Law § 349 and as a result was unjustly enriched. *See* Compl. ¶¶ 69-86. Both of these claims relate to the Postmates platform and Plaintiff's relationship with Postmates and thus fall squarely within the types of disputes covered by the arbitration agreement. And it is well settled that "[i]f the allegations underlying the claims 'touch matters' covered by the parties' ... agreements, then those claims must be arbitrated." *Paramedics Electromedicina Comercial,* 369 F.3d at 654 (citation omitted). Given the broad scope of the arbitration agreement covering "every dispute arising in connection with [the TOS]," it is clear

that Plaintiff's claims are covered by the arbitration agreement at issue. *Id.* Plaintiff and

Postmates must be bound by the terms of their arbitration agreement.

## **CONCLUSION**

Plaintiff entered into a valid and binding arbitration agreement with Postmates, under

which any claims she might have must be brought in an individual arbitration.  The claims she

seeks to bring here fall squarely within the scope of that agreement. Accordingly, the Court

should grant Postmates' motion to compel individual arbitration and dismiss this action.

Dated:  August 26, 2019                    ZWILLGEN PLLC

By:  /s/ Jeffrey Landis
Jeffrey Landis
jeff@zwillgen.com
Adya Baker (admitted *Pro Hac Vice*)
adya@zwillgen.com
1900 M Street NW, Suite 250
Washington, DC 20036
(202) 296-3585 (telephone)

*Counsel for Defendant*

16

## CERTIFICATE OF SERVICE

I, Jeffrey Landis, hereby certify that on August 26, 2019 I served the foregoing document

on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF

filing system.

/s/ Jeffrey Landis
Jeffrey Landis