**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FELD, et al.,

*Plaintiff*,                    Case No. 1:19-cv-03899 (PKC)

v.

POSTMATES, INC.,

*Defendant.*

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..............................................................................................ii

**PRELIMINARY STATEMENT** ...................................................................................... 1

**FACTUAL BACKGROUND** ............................................................................................ 2

**ARGUMENT** .................................................................................................................... 4

    I.    DEFENDANT HAS NOT DENIED THE SIGN-UP SCREENS JAMIE EXPERIENCED DID NOT PROVIDE NOTICE OF ARBITRATION PROVISIONS ............................................................... 5

    II.    DEFENDANT NOTICE OF ARBITRATION PROVISIONS WAS NOT REASONABLY CONSPICUOUS AND JAMIE DID NOT MANIFEST UNAMBIGUOUSLY ................................... 5

**CONCLUSION** ............................................................................................................... 14

i

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Applebaum v. Lyft, Inc.*,
  263 F. Supp. 3d 454 (S.D.N.Y. 2017) ............................................................................ 6, 12-13

*Crawford v. Beachbody, LLC*,
  No. 14CV1583–GPC(KSC), 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) .........................9-10

*Fteja v. Facebook*,
  841 F. Supp. 2d 829 (S.D.N.Y. 2012).............................................................................9

*Green Tree Fin. Corp.-Ala. v. Randolph*,
  531 U.S. 79 (2000)............................................................................................4

*Hines v. Overstock.com, Inc.*,
  380 Fed. Appx. 22, 24 (2d Cir. 2010) ..................................................................4

*Long v. Provide Commerce, Inc.*,
  245 Cal.App.4th 855, 864-867 (Ct. App. Div. 3 2016) ............................................4

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017)…......................................................................... 4-8, 12-13

*Nat'l Union Fire Ins. v. Belco Petroleum Corp.*,
  88 F.3d 129, 135 (2d Cir. 1996) …................................................................... 4

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016).......................................................................... 10-11

*Schnabel v. Trilegiant Corp.*,
  697 F.3d 110 (2d Cir. 2012)............................................................................. 12

*Specht v. Netscape Commc'ns Corp.*,
  306 F.3d 17 (2d Cir. 2002) ....................................................................13

*Starke v. Gilt Groupe, Inc.*,
  No. 13–CV–5497, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ............................9

*Starke v. SquareTrade, Inc.*,
  913 F.3d 279 (2d Cir. 2019) ........................................................................6, 8

*Swift v. Zynga Game Network, Inc.*,
  805 F. Supp. 2d 904 (N.D. Cal. 2011) .................................................... 10

**STATUTES**

9 U.S.C. § 2 .......................................................................................................... 4

9 U.S.C. § 4 .......................................................................................................... 4

## PRELIMINARY STATEMENT

This Court has jurisdiction over this dispute because Plaintiff Jamie Feld ("Jamie") did not assent to Postmates Inc.'s ("Defendant") invalid and non-binding New York arbitration agreement. Compl. ¶ 9.

This consumer class action was filed against Postmates on May 1, 2019, alleging violations of New York's General Business Law § 349 and unjust enrichment on behalf of Jamie and a putative class comprised of all New York persons (i.e., consumers and non-consumers) who have used Defendant's services, during the period extending from January 15, 2012 through and to the filing of the Complaint. *Id*. ¶ 55.

Jamie found Defendant's "Anything. Anytime. Anywhere." advertising statement "false, misleading, and likely to deceive reasonable customers" because Postmates only provides delivery from "a specific set of vendors at specified times and locations." Compl. ¶ 2, 42. Jamie also found Postmates charges a "hidden" service fee in addition to the delivery fee associated with each order. See id. at ¶43. These findings have not been contested by Defendant besides declaring that "Plaintiff's claims lack merit". Defendant's Pre-Motion Letter to Compel Arbitration (07/24/19); Defendant's Motion to Compel Arbitration, p.5 (08/26/19).

Jamie's claims before the Court cannot violate Defendant's invalid and non-binding arbitration agreement because there was no clear and conspicuous notice or mutual assent as required by the Federal Arbitration Act ("FAA").

At no relevant time did Defendant clearly and conspicuously present Jamie with an arbitration agreement. Jamie experienced a sign-up flow that did not present (i.e., it was not brought to Jamie or a reasonable person in her position's attention) or notify of the contractual nature of the invalid and non-binding arbitration agreement and did not allow the opportunity

to review the terms before manifesting consent.

Jamie did not form a contract with Defendant that included Defendant's invalid and non-binding arbitration agreement because there was no express or inquiry notice. Jamie seeks to remedy the deceptive practices and seeks compensation and other damages.

The Second Circuit has found similar sign-up flows to be not binding or enforceable. Defendant should not be permitted to compel Jamie to submit her claims to individual arbitration and Defendant's Motion to Compel Arbitration should be dismissed.

**FACTUAL BACKGROUND**

On the Defendant's online marketplace sign-up screen, there are two blank fields requiring potential buyers to enter their email address and password. Campbell Decl. ¶ 6. The blank fields are noticed by their big "Email Address" and "Password" titles that must be filled in before continuing to the next screen. Below these fields, wedged in before the Sign-Up button, the following statement is displayed in a smaller typeface, "By clicking the Sign Up or Facebook button, you agree to our Terms of Service and Privacy Policy." Defendant's website Sign-up Screen (below). By having this statement below the two other fields and snuck in before the Sign-Up button, it achieved the effect of having users enter their information and hit or press enter without reading the statement. Compl. ¶ 28. The sentence is presented in light grey typeface, with black phrases "Terms of Service" and "Privacy Policy" to denote the hyperlinks. *Id.* Campbell Decl. ¶ 6. Notably, Jamie was not aware of the sentence and it is not bolded, or at least not as bold or noticeable as the email address and password titles. Compl. ¶ 28-37; Defendant's Website Sign-Up Screen (below).

No potential buyer can sign-up for, or place an order using, the Defendant's online marketplace without clicking either the Sign-Up or Facebook button. But it is clear, most if not all New Yorkers sign-up and begin to see deceptive advertisements without noticing

Defendant's hidden, invalid and non-binding arbitration agreement. Compl. ¶ 17-37.



Defendant's Website Sign-Up screen (above)



Defendant's App Sign-Up screen (above)

# ARGUMENT

Defendant's invalid and non-binding arbitration agreement is not enforceable. Agreements to arbitrate are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. § 2. The United States Court of Appeals, Second Circuit, examines contracts for proper formation, regardless of the enforceability of any particular provision. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017).

Under the FAA, a dispute is only arbitrable if there is a valid agreement to arbitrate under the contract. See *Nat'l Union Fire Ins. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996). The Court must not grant a motion to compel arbitration if there are issues with "the making of the agreement for arbitration or the failure to comply therewith[.]" 9 U.S.C. § 4.

The party seeking to arbitrate has the initial burden of proving that there was formation of the arbitration agreement (i.e., clear and conspicuous notice and assent). *Hines v. Overstock.com, Inc.*, 380 Fed. Appx. 22, 24 (2d Cir. 2010) ("a party seeking to invoke FAA § 4 must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement "in issue."; "The party seeking to stay the case in favor of arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made.")

The burden-related case mentioned by Defendant, *Green Tree Fin. Corp.*, only applies if an arbitration agreement is trying to be invalidated, not where the argument, as is here, is that no formation of the arbitration agreement ever occurred. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000) ("a party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive bears the burden of showing the

likelihood of incurring such costs.").

Here, Defendant cannot meet the necessary burden of proving that there was formation of the arbitration agreement (i.e., clear and conspicuous notice and assent).

### I.     Defendant has Not Denied the Sign-up Screens Jamie Experienced Did Not Provide Notice of Arbitration Provisions

Defendant is not addressing the exhibits provided in the complaint showing the website login and/or the app login (above). There is no explanation provided as to why they are not addressed or why Defendant introduces different versions. This Motion to Deny Defendant's Motion to Compel Arbitration should be granted because Defendant is not denying the allegations in the complaint that Jamie's sign-up screens did not provide notice.

### II.    Defendant Notice of Arbitration Provisions Was Not Reasonably Conspicuous and Jamie Did Not Manifest Unambiguously

Jamie did not assent to the invalid and non-binding arbitration clause and class action waiver. Courts only enforce a motion to compel arbitration "where the notice of the arbitration provision [is] reasonably conspicuous and manifestation of assent [is] unambiguous." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017).

Where there is no evidence that an offeree had actual notice of the terms of the agreement, the offeree will only be bound by the agreement if a reasonably prudent user would be on inquiry notice of the terms. *Meyer*, 868 F.3d at 75-77. In Jamie's case, there is no evidence presented that Jamie had actual or inquiry notice of the arbitration agreement and Jamie denies that there was actual or inquiry notice. Compl. ¶ 28-37.

Whether a reasonably prudent user would be on inquiry notice turns on clarity and conspicuousness, and in the context of web-based contracts, clarity and conspicuousness are a function of the design and content of the relevant interface. *Meyer*, 868 F.3d at 75-77. The touchstone of the analysis is whether reasonable people in the position of the parties would have

5

known about the terms and the conduct that would be required to assent to them. *Id.* Terms are only enforceable when the specific color, font, spatial position, and other design elements coordinate in such as a way as to put a reasonable person in the position of the parities on notice, and, if any of the necessary design elements are missing, a reasonable factfinder is permitted to decide if notice was not reasonably conspicuous or the assent unambiguous. *Meyer*, 868 F.3d at 78; *Applebaum v. Lyft, Inc.*, 263 F.Supp.3d 454, 465 (S.D.N.Y. 2017) (holding that determining whether a customer is on inquiry notice is a "fact-intensive inquiry"). Formation does not occur even if assent could be said to be unambiguous so long as notice is not reasonably conspicuous. *Id.*

Furthermore, after *Meyers*, *Starke* was decided with the Court providing a guidepost for analysis where every factual element of the design was examined before declaring if notice was given to a reasonable person in the parties' position – and finding no notice was given where the notice was too dissimilar to the notice in *Meyers*. *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 292-297 (2d Cir. 2019).

In Jamie's case, there was no formation that included the arbitration agreement because a reasonable person in Jamie's position would not be on actual or inquiry notice about it or the conduct required to assent, i.e., there was no "reasonably conspicuous notice". Compl. ¶ 17-37. Defendant's sign-up flow does not satisfy the reasonably conspicuous notice and assent requirements.

The Second Circuit has addressed multiple sign-up flows where they held inconspicuous terms to be unsatisfactory or invalid. Furthermore, Defendant's sign-up flow is distinguishable from any case where the Second Circuit has found them to be satisfactory or valid.

In *Meyer,* the Uber account sign-up flow occurred at point where the user was being asked to input credit card information. Users clicked a button marked "Register" underneath which there

was notice language stating "By creating an Uber account, you agree to the TERMS OF SERVCE & PRIVACY POLICY." in bright blue and bold typeface to represent to a reasonable user that they were hyperlinked. *Meyer*, 868 F.3d at 71, 76, 78. The Court found, only after examining every conspicuous feature (mentioned below), that there was enough to find a reasonable person would be on inquiry notice of the terms. *Id.* at 77-80.

The same factors the Second Circuit said constitute clear and conspicuous notice in *Meyer* are NOT present in the Defendant's sign-up process, both online and in the App. A few of many are listed below.

(1) Defendant's terms are not in all caps, underlined, bolded or in a different contrasting color (just a different shade off-grey), whereas Uber has all caps, underline, bold and different color typeface (as opposed to just a different shade). *Meyer*, 868 F.3d at 81-82 (Addendum A and B).

(2) Defendant's terms are not presented on a screen related to a specific transaction so a reasonable person would not search for extra terms and conditions while still deciding if they want to order food delivery, whereas Uber's terms are presented on a credit card input page clearly and conspicuously conveying to a reasonable person that a detailed contractual agreement is being conveyed and consummated. *Id.*

(3) Defendant's terms are on a screen cluttered with food, a pop-up box, and lots of color and text in random places making it much more difficult for a reasonable person to be on notice of the buried arbitration agreement, whereas Uber's interface is clean, formal, not distracting and easier to read. *Id.*

(4) Defendant's terms themselves are tucked and buried between the username/password data entry point and the Sign-Up button in a way that makes it more likely to be missed (i.e., inconspicuous or ambiguous) by a reasonable person, whereas Uber has them under the Sign-Up button so reasonable person's eyes are more drawn to it. *Id.*

A side-by-side comparison of the sign-up flows in *Meyer* and this case show their drastic differences:



Uber Payment Picture: *Meyer v. Uber Techs., Inc.*,       Defendant's Website
    868 F.3d 66, 81 (2d Cir. 2017)

Defendant's sign-up flow is distinguishable from where the Second Circuit found sign-up flows to be satisfactory for enforcing arbitration agreements. The same factors the Second Circuit said constitute notice are NOT present in the Defendant's sign-up process, both online and in the App. A few of many are listed below. *It is important to note that Defendant's use of a hyperlink next to a button that allows you to continue to the next page is not dispositive for concluding if clear and conspicuous notice existed. See *Starke*, 913 F.3d at 292-297; *Meyer*, 868 F.3d at 75-77.

(5) The amount of text in Defendant's sign-up screen that would alert a reasonable person of the terms and condition is about half as much as the text found in *Gilt*.

8

*Gilt's* text is clearly more able to make a reasonable user realize its existence. Furthermore, *Gilt* did not have any of the distractions that Defendant uses, such as floating cheeseburgers in front of people who are likely hungry. Defendant's Website (above); *Starke v. Gilt Groupe, Inc.*, No. 13–CV–5497, 2014 WL 1652225, at *1 (S.D.N.Y. Apr. 24, 2014) (citing Gilt's sign-up screen text that says "the consumer will become a Gilt member and agrees to be bound by the 'Terms of Membership'" and "By joining Gilt through email or Facebook sign-up, you agree to the *Terms of Membership* for all Gilt Groupe sites.").

*(6)* In *Fteja*, the Court found mainly that hyperlinked terms of service maybe valid if they provide notice, e.g., they are not spatially decoupled. *Fteja v. Facebook*, 841 F. Supp. 2d 829, 841 (S.D.N.Y. 2012). The record does not disclose other details of the design interface that could be relevant to the formation discussion, e.g., font or color of background or text. Furthermore, *Fteja's* Plaintiff focused their arguments around clickwrap vs. browse-wrap instead of focusing on what type of browse-wrap agreements are valid. *Fteja*, 841 F. Supp. 2d at 839. Notably, the only mention in *Fteja* of design related to the validity of browse-wrap agreements tends to show that it was a requirement for there to be a different color covering the terms of service, whereas Defendant's terms are not colored. *Fteja*, 841 F. Supp. 2d at 840 (noticing how the hyperlinks were "blue"). This indicates that if confronted with Defendant's sign-up flow, the *Fteja* Court would have not held the agreement valid.

*(7)* Conspicuous notice provided to a reasonable person in the parties' position will necessarily be different if the position of one party is at a checkout screen, like in *Crawford* (or *Meyers*), and the other party, like Jamie, is just downloading an application (i.e., before seeing any services/goods for sale). *Crawford v. Beachbody, LLC*, No. 14CV1583–GPC(KSC), 2014 WL 6606563, at *1 (S.D. Cal. Nov. 5, 2014).

*Crawford's* analysis was based on users who were looking for terms because they are about to make a purchase, which was clear from the button they had to press that said, "PLACE ORDER". *Id.* The analysis here should be distinguished because Jamie was not about to make a purchase. Defendant should be required to provide notice that would be clear and conspicuous to a reasonable person in the position of a reasonable internet-connected food delivery application user who just downloaded an application and has not viewed any services/goods for sale, i.e., the position Jamie was in. Furthermore, in *Crawford*, Beachbody had a blue link, which is more clear and more likely to lead a user to realize the existence of legal terms than the grey one Defendant uses. *Id.*

(8) The example Defendant raised in *Swift* is distinguishable from here because the merchant (Zynga) added content to make it clear the user was clicking on "accept" as opposed to Defendant's language that said "sign-up". *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 908, 912 (N.D. Cal. 2011). The words "accept" make reasonable users consider what they are accepting, i.e., legal terms, and may alert them to terms that should be read, whereas Defendant's "Sign-Up" button would not put a reasonable user on notice that they are accepting any limitations on their rights, or any terms at all.

By contrast to those cases, Defendant's sign-up flow is very similar to those that the Second Circuit has found do not provide a potential user with adequate notice.

In *Nicosia v. Amazon.com, Inc.*, the Second Circuit examined an Amazon order page that required a user to click a button marked "Place your order," with the notice language "[b]y placing your order, you agree to Amazon.com's ... conditions of use" displayed under the webpage heading on the order page. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 236-37 (2d Cir.

10

2016). The Court held that "reasonable minds could disagree" that the design of the order page screen containing the "[p]lace your order" and notice language provided sufficient notice. *Id.* at 236-37. The Court considered the following factors in remanding the case: the notice language was not "bold, capitalized, or conspicuous in light of the whole webpage"; the screen was cluttered and "text [] displayed in at least four font sizes and six colors;" multiple buttons and promotional advertisements distracted from the notice language also distracted from the notice language. *Id.* at 237.

Similar to the way Amazon hid to terms under the webpage heading in *Nicosia*, the Defendant's website terms were placed where a reasonable reader would naturally not notice or skip over them without realizing they included legal terms and not just another advertisement. *Nicosia*, 834 F.3d at 237. Furthermore, like the order page cluttered with links and text in different fonts, sizes and colors, and multiple buttons and advertisements in *Nicosia*, the Defendant's website sign-up flow contained distractions ranging from different typefaces, buttons, advertisements, pop-ups, etc., that distracted the Jamie and other reasonable users from the terms. *Id*.

In *Starke*, a pivotal case only cited by Defendant in a footnote, the Court found no reasonable notice was given where (a) the user was not provided with terms on the order page prior to sale; (b) the post-sale email containing the "Terms and Conditions" hyperlink was "cluttered with diverse text, displayed in multiple colors, sizes and fonts, and feature[d] various buttons and promotional advertisements that distract the reader from the relevant hyperlink."; (c) the user was not signaled to click the hyperlinked Terms and Conditions "buried at the bottom of the email"; and (d) the hyperlink was neither "spatially nor temporally coupled" with the "Add to Cart" button. *Starke*, 913 F.3d at 293.

In Jamie's case, she never received any terms on the order page or a post-sale email with

terms. Assuming in Jamie's case, the terms were put in the proper place for the Sign-Up and check out flow, they were still just as inconspicuous as those in *Starke* because Defendant's screens are equally, if not more, cluttered with diverse text (but not the terms) displayed in multiple colors, sizes and fonts, and featured various buttons and promotional advertisements likely to distract a reasonable user who is not signaled to click the hyperlinked terms.

Very similar to Postmates and *Starke*, *Long* made it clear that, "[t]hough it may be that an especially observant Internet consumer could spot the Terms of Use hyperlinks on some checkout flow pages without scrolling, that quality alone cannot be all that is required to establish the existence of an enforceable browse-wrap agreement." *Long v. Provide Commerce, Inc.,* 245 Cal.App.4th 855, 864-867 (Ct. App. Div. 3 2016) (finding the Terms of Use hyperlinks—their placement, color, size and other qualities relative to the ProFlowers.com Web site's overall design—are simply too inconspicuous to meet the standard). *Long* should be given heavy weight even though it is from California because, as Defendant notes, the Second Circuit has determined that "New York and California apply 'substantially similar rules for determining whether the parties have mutually assented to a contract term.'" *Meyer*, 868 F.3d at 74 (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012)).

In *Long*, the Court did not allow the terms to be enforced because the hyperlink to the terms was presented on a page that contrasts in a way that distracts a reasonable user, similar to Defendant's overly colorful screen that makes it difficult to realize the grey hyperlink and also similar to Defendant's hyperlink buried between two bright data input interfaces (email/password entry and the Facebook login button), decreasing the chance Jamie would notice. *Id.*

Most similar to Defendant and most authoritative where a Court invalidated terms, the Court in *Applebaum* was faced with an interface screen that itself was misleading. *Applebaum v. Lyft, Inc.*, 263 F.Supp.3d 454, 465 (S.D.N.Y. 2017) (declaring the screen with the Box to be

checked for "Lyft's Terms of Service" was misleading because no notice was provided that users were entering into a contract).

Similar to how Lyft's design elements were not made to make a reasonable person think they are completing a detailed contract, Defendant's entire process and screens seen by the users (colored or not) were structured as a way to register to browse restaurants, and not as a process to complete a "detailed contractual agreement". *Id*., at 465-468. Furthermore, Lyft's terms of service were thrown out even though the user had to check a box before hitting the "Next" button, which is a whole extra step that Defendant is not using (or addressing in their motion).

As mentioned earlier, besides there being no notice of the arbitration agreement, Jamie never manifested her assent, which is a separate and distinct requirement. As Defendant mentions, manifestation of assent may be demonstrated "by written or spoken word or by conduct." *Meyer,* 868 F.3d at 74 (quoting *Specht v. Netscape Commc'ns Corp.,* 306 F.3d 17, 29 (2d Cir. 2002)).

Jamie's actions were, at best, ambiguous at showing assent, and clearly not "unambiguous" per *Meyers*, given that none of Jamie's actions would be different from somebody who did not read the terms or arbitration agreement. What stands out in terms of fairness to the user is that Defendant could be sure to acquire assent from a reasonable user if they used a check box next to the terms or required Jamie to scroll through them before continuing, or even required credit card details to be input – really anything that would signal to both parties that they were engaging in an undertaking where certain rights were being waived (i.e., not just an almost purposefully small, easily missed hyperlink next to a sign-up button).

Accordingly, Jamie had no notice of the arbitration agreement and could not manifest her assent. Jamie is not bound by any arbitration agreement.

**CONCLUSION**

Jamie did not enter into an invalid and non-binding arbitration agreement with

Defendant. Accordingly, the Court should deny Defendant's Motion to Compel Arbitration.

Dated:  September 26, 2019

By: /s/ Matthew Bobrow
Matthew Bobrow
matthew.bobrow@law.nyls.edu
125 East 4th Street, #16
New York, NY 10003
(908) 610-5536 (telephone)

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I, Matthew Bobrow, hereby certify that on September 26, 2019 I served the foregoing

document on all counsel of record by filing it electronically with the Clerk of the Court using the

CM/ECF filing system.

/s/ Matthew Bobrow
Matthew Bobrow
